Good morning members of the panel and Ms. Proctor. My name is Lori Tyker appearing on behalf of petitioner appellant Ignacio Macias. I intend to reserve two minutes for a rebuttal. This is your second case this morning regarding what I maintain to be the district court's error in concluding that the Nevada Supreme Court in this case unreasonably determined that Mr. Macias' plea was voluntary, knowing, and intelligent. And your second case this morning dealing with Boykin and Brady. Can you keep your voice up? Oh, sure. I'm sorry. Thank you. Short. I'm not very close to the microphone. Under Boykin and Brady, which you've already discussed one time this morning, a plea is not voluntary unless a review of all of the relevant circumstances surrounding it takes place. And I maintain that Mr. Macias' plea was not voluntary when you take a look at all of the relevant circumstances surrounding it. What you have is a lot of unusual things going on in terms of how a guilty plea typically goes down in a criminal proceeding. You have a situation where the jury has been selected, and the jury's been selected. They take a break for lunch, and when when they come back, Mr. Macias is determined that he wants to enter a plea at that point, at which case he pleads straight up to all three counts of the large, carrying a sentence of at least 10 years, to either a sentence of 10 to 25 or 10 to life on that sentence. The jury, the other unusual or atypical thing that happens during this plea is that once that's determined, the trial judge brings the jury in, and the jury sits there while Mr. Macias enters his plea. I think that's important when you, again, you look at all of the relevant circumstances surrounding this, because there are some problems with the canvas that we go into in our briefing, and that there are, it's a situation where Mr. Macias, and there is an interpretation issue here because Mr. Macias does speak Spanish, but you have about half of the answers here, he says yes, no, yes, no, and about half of them are wrong. And, for instance, do you still wish to go forward and change your plea this afternoon? Mr. Macias says no, but the transcript shows that the interpreter answers, I am guilty, yes, for that. So you still want to go forward and give up your jury trial, and these jurors who are sitting there will be sent home. No, and then the court presses further, you want me to send the jurors home? The trial judge is in an unusual situation here because she has this jury sitting here, and if this plea doesn't go down, we're done. She's got a, there's a jeopardy issue that is at issue here, but you have a situation where the judge has a situation, there's no going back, because obviously this panel can't go forward with a trial if, in fact, she determines at that point, this plea is not knowing voluntarily and intelligently made, and shouldn't go forward. Another atypical situation that you have going here is that no guilty plea agreement was ever prepared or read to the defendant. It's not in, they talk about it, the judge asks, do you have a guilty plea agreement, and the district attorney says, no, we don't, but we'll supplement the record with it later. Again, you have a situation where you have a Spanish-speaking defendant, you have a, he's decided in the middle of trial that he's going to plea guilty straight up to all these counts, and you don't even have a document that the interpreter's able to, and his lawyer are able to go through with him on this lunch break and go through it. Well, let me ask you about the back and forth and the Spanish translation. Although you haven't directly challenged the translation, you've challenged the surrounding circumstances in terms of his voluntariness. Where did the Nevada court go wrong in its findings, in your view? I believe that the Nevada court went wrong when you look at, again, all of the relevant circumstances surrounding it, as stated in Carter v. McCarthy and Brady and Boykin. And a plea is voluntary only if it's measured by one fully aware of the direct consequences. And I think that here, you have so many, you have all of these strange, unusual things going on, that I think you have a situation where, and I think the sentencing goes towards this, too, in terms of what counsel says, I think you have a situation where the plea, when it went down, Mr. Macias didn't really understand what was going on. And it's clear that he was struggling with the questions. He was hesitating. The district attorney in the case admitted that he was crying throughout it. You have a very strange situation where you have a jury sitting there while he's entering his plea. You have the translation issue. You don't have a guilty plea that he ever signed. He does eventually get the questions right, but again, it's eventually, it takes some time. And it wasn't that a consequence. I think that when this went before Judge McKibbin, he noted that maybe those questions were too complicated, and then the trial judge straightened things out and got things back on track, which is what you'd want a judge to do. You're looking at the defendant. You want to judge whether he's understanding you. So the fact that they did that, isn't that actually kind of go against your view, your argument? It certainly cleans it up a little bit in terms of what's going on. I concede that. It does. And it's broken down, but I think, again, the important thing to look at is the totality of what happened. And I will maintain, if you look line by line throughout that plea colloquy, you have a situation where also you have a clerk reading what the charges are, and it's the simple yes and no. Do you understand what this charge is? And she reads what it is, you know, knowingly possess this amount of drugs. Do you understand this? Yes. Then do you understand the intent behind that? Yes. He's never, Mr. Macias has never directly stated, he's never told to say to the court, explain to me what you did that's requiring you to plead guilty. Again, it's just this lack of understanding. And I think when you look at the overall circumstances, the lack of a knowing and intelligent and voluntary plea going down the way that it did. The problem with the argument is that in most pleas or in many, it's unclear whether the defendant understands what's going on. And the lawyer stands next and says, say yes or say no, et cetera. But what legal authority do you have that would indicate that this case was so exceptional? I mean, even aside from interpretation problems, that we should say the plea was involuntary. Well, I think if you and again, if you look at all the case law, which, you know, which we've done and we've briefed and we we've laid out in it, what you find is you find cases, you know, this this circuit as well as other circuits, as well as the U.S. Supreme Court. Give me your best case. My best case. I think you have to look at it in combination with all the different pieces that I'm putting together. But I think that my best case would have to be a combination of cases. It would be a Boykin or a Brady or a Carter in terms of how things went down. I think that the Damon case is important when you're looking at, you know, the physical problems that Mr. Macias was going through. I think Douglas is well, I'm sorry, it goes to another issue. I take that back. I stand corrected. But I think you have to take a look at all those cases in combination. And I think Mr. Macias's case can be distinguished. And parts of those cases can be put together to show that his plea just wasn't knowing involuntarily. And he should have been allowed to withdraw it before sentencing. Actually, you decided to Damon and here was a Rule 11 violation in analysis. Isn't that this case in apposite? This case is different. But by analogy, I think that because it is a state case proceeding. But clearly in Nevada, the same situation, the same standard in terms of knowing involuntariness of a plea is applied to a defendant. And certainly in a situation where a court doesn't go forward when they have reason to believe that the defendant isn't competent to go further and to enter the plea in Nevada, that court should be found in error as well. And I'll save the remaining 38 seconds for her. All right. Thank you. May it please the Court, my name is Heather Proctor with the Nevada Attorney General's Office. And I have the honor of representing the respondents in this matter. With regard to the allegations that the trial court abused its error in denying the motion to withdraw a guilty plea, the petitioners raised several arguments which were never presented or granted certificate of appealability in this matter, whether there was a guilty plea agreement and regarding the translation. With regard to the determination that it was within, that the change of plea was in front of the jury, was also never raised in the certificate of appealability, nor was it raised as a argument in the federal court below. He does allege problems with the canvas. However, taking the entire canvas together, the canvas in this matter met the requirements of Brady, of Boykin, and is a proper canvas. As the petitioner briefly noted, but I would like to go through the canvas briefly, outside the presence of the jury, the petitioner was asked, do you understand the negotiations? Yes. Do you understand what counsel is talking about with regard to changing your plea? Yes. Do you understand the change of plea and you will not have a jury trial? You will not continue with your trial? Yes. The jury was brought in. The petitioner was read his constitutional rights, which he acknowledged he understood, and waived each of those rights. He was read the notice of charges, which included the nature and the elements of each of the charges. He acknowledged he understood each of those charges. He also admitted to committing each of those offenses. He was asked if he understood that he was not guaranteed a specific result as to a guilty plea. He, there was some confusion there. He responded no. The court broke it down. Do you understand you could receive probation under certain circumstances? Yes. Do you understand that this court has sole discretion to determine if you've met the circumstances? Yes. Do you understand that this court has sole discretion as to the final sentence you will receive? Yes. Do you understand that no one can promise you a specific sentence in this matter? The court broke it down so that he could very more easily understand and respond to the questions. Wasn't the defendant very emotional during the Peay colloquy? I mean, didn't we have tears? Wasn't there a question of whether or not he met the legal requirements for a psychological consultation? Yes, Your Honor. Both the defense counsel at the state evidentiary hearing and state's counsel at the motion to withdraw the guilty plea, both stated that the petitioner was crying at the time of the change of plea. The request for a psychological evaluation did not occur until the time of sentencing, which occurred three months after the change of plea hearing. At that time, the, excuse me, at the state evidentiary hearing, the trial counsel testified that in his opinion, the tears were a demonstration of remorse for what the petitioner had done to his family through his own acts. The psychological evaluation request occurred after counsel stated on the record at the sentencing hearing, following my discussion with my client this morning, it appears he's understanding less and less. That also follows a finding by the state district court following the evidentiary hearing that counsel testified credibly that at no time at the pre-sentence meetings that the petitioner manifest confusion or disorientation indicative of mental or physical disorder warranting a psychological evaluation. So it was not until the sentencing hearing, which was held three months after the change of guilty plea, that the trial counsel raised a question that potentially my client might have to have a psychological evaluation. Even then, counsel was not entirely convinced that a psychological evaluation was necessary. In terms of the plea canvas, there was some questions at the end as to whether he truly did want to withdraw his guilty plea. As your honor noted, the court was keeping him on track based on his earlier responses throughout this extensive plea canvas. Are you sure you want to change your plea? Is this what you want to do? Do you want to send the jurors home? Do you want to change your plea to guilty to the three counts? Moreover, at the very end of this plea canvas, the court asked, are you entering these pleas of your own free will? The defendant said yes. Is this what you want to do today? Yes. There's been no demonstration that the guilty plea was not knowingly and voluntarily entered. Unless the court has further questions with regard to this, I would submit. Thank you. Thank you. We'll give you a minute for rebuttal. Thank you. Regarding the Attorney General's assertion that I've expanded the record improperly, I don't believe that I have regarding whether or not reference was made within the pleadings as to there not being a guilty plea agreement prepared or the translation issue. I believe that those have been raised in the briefs throughout the pendency of these proceedings. They were raised in the amended petition. And I would argue that it's not a new claim. It's argument in support of the issue that was certified in appeal and clearly acceptable under Tillema and Little v. Crawford, as mentioned in the reply brief. And then briefly. This goes, in your view, to the involuntariness, the totality of the circumstances. Yes, Your Honor. Regarding counsel and what happened at sentencing pursuant to him moving to withdraw his plea at that time, I would note that I think it's important to look at the state post-conviction evidentiary hearing and notice how much counsel backed off because counsel did say that he remembered at the time of entry of plea that Mr. Macias couldn't stand the headaches and he felt a lot of pressure. He said that he backed off in post-conviction. He also, I don't believe there's a reasonable interpretation regarding him saying that he was quite simply scared and that's why he wanted to enter his plea when you have a situation where he was so concerned before sentencing that he asked to approach the bench. And he said that he wasn't sure that Mr. Macias truly understood the nature of the proceedings. And I think that's an extraordinarily important sentence to look at. He asked for him to be evaluated. He was understanding less and less of what was going on. And I would ask that you take that in consideration in looking at the totality and I would submit it unless there's further questions. Thank you. Thank you. They just argued Macias versus Dunn. It is submitted. We thank you both for coming this morning.
judges: Hug, Nelson D. W., McKeown